UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STEPHEN L. FURNEY,

      Petitioner,

v.                                  Case No.  3:14cv499/MCR/CJK

JULIE L. JONES,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 17).  Petitioner replied.  (Doc. 20).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to habeas relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On June 17, 2010, petitioner was charged in Escambia County Circuit Court Case No. 10-CF-002015, with four crimes involving a thirteen-year-old boy (H. H.): lewd or lascivious conduct (Count 1), lewd or lascivious molestation (Count 2), lewd or lascivious battery (Count 3) and promoting sexual performance by a child (Count 4).  (Doc. 17, Ex. B).[1]  Petitioner went to trial in August of 2011 (Ex. C) and was found guilty by jury verdict of Counts 1, 2 and 4 as charged, and not guilty of Count 3.  (Ex. C, pp. 358-359 (oral verdict), Ex. F (written verdict)).  Petitioner was adjudicated guilty of Counts 1, 2 and 4, and sentenced to 16 years imprisonment on Count 1, consecutive to a 47.5 month prison sentence imposed for petitioner's violation of probation in Case No. 95-CF-002065; 10 years imprisonment on Count 2, consecutive to Count 1; and 10 years imprisonment on Count 4, consecutive to Count 2.  (Ex. C, pp. 376-377 (oral pronouncement); Ex. H (judgment and sentence)).  Petitioner was adjudicated not guilty of Count 3.  (Ex. G).  Petitioner initiated a direct appeal.  (Ex. K).  Appellate counsel filed an *Anders* brief, asserting that no good faith argument could be made that reversible error occurred in the trial court.  (Ex. L).  Petitioner filed a *pro se* brief.  (Ex. N). The Florida First District

---

[1] All references to exhibits are to those provided at Doc. 17, unless otherwise noted.

Court of Appeal (First DCA) affirmed the judgment on March 27, 2012, per curiam and without a written opinion.  (Ex. O).

On May 7, 2012, petitioner filed a *pro se* state habeas petition alleging ineffective assistance of appellate counsel.  (Ex. P).   The First DCA denied the petition on the merits on May 25, 2012.  *Furney v. State*, 87 So. 3d 1272 (Fla. 1st DCA 2012) (Ex. Q).

On September 7, 2012, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. R).  The court appointed counsel to represent petitioner (Ex. T), conducted an evidentiary hearing (Ex. V) and, following the hearing, denied relief in a written order (Ex. W).  The First DCA affirmed on July 17, 2014, per curiam and without a written opinion.  *Furney v. State*, 146 So. 3d 1175 (Fla. 1st DCA 2014) (Table) (copy at Ex. BB).  The mandate issued September 19, 2014.  (Ex. BB).

Petitioner filed his federal habeas petition on September 18, 2014.  (Doc. 1, p. 1).  Petitioner raises three grounds for relief, the last of which contains two sub-claims.  (*Id*., pp. 4-10).  Respondent asserts that petitioner is not entitled to relief, because he procedurally defaulted one claim and fails to satisfy the § 2254(d) standard with regard to his remaining claims.  (Doc. 17).

## LEGAL STANDARDS

### Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78.  A claim that was not properly presented to the state court and can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal review.  *O'Sullivan*, 526 U.S. at 839-40, 848; *Hittson v. GDCP Warden*, 759 F.3d 1210, 1260 n.56 (11th Cir. 2014) ("Where a return to state court would be futile – because the petitioner's claims would clearly be barred by state procedural rules – a federal court can 'forego the needless judicial ping-pong' and treat unexhausted claims as procedurally defaulted." (*quoting Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998)));

*Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*citing Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). This standard is very difficult to meet:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

513 U.S. at 327.  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Id*.

 Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront

the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance."  *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1).

The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id*.; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If

this standard is difficult to meet, that is because it was meant to be." *Richter*, 562

U.S. at 102.

## DISCUSSION

Ground One            "Trial counsel was ineffective for misadvising the petitioner that
the State could not obtain a conviction[,] resulting in the
petitioner rejecting a plea offer that would have resulted in a
more favorable sentence; in violation of the petitioner's Sixth
and Fourteenth Amendment right of the United States
Constitution."  (Doc. 1, p. 4).

Petitioner alleges that prior to trial, the prosecutor presented petitioner with a

plea offer disposing of the charges in this case and the violation of probation (VOP)

charge in Case No. 95-CF-002065.  Petitioner describes the plea offer and ensuing

negotiations as follows:

> Prior to trial, the prosecutor in this case presented the Petitioner
> with a global plea offer which required him to plea guilty to all the
> charged offenses and admit to the violation of probation (in an unrelated
> case) in exchange for a prison term of fifteen (15) years.  Petitioner's
> trial attorney advised Petitioner that he (counsel) could "beat" (or win)
> the charges at trial and that the Petitioner should reject the plea offer.
> Based on counsel's advice, Petitioner declined the offer.  On November
> 10, 2011 the Petitioner, after a hearing was found guilty of the unrelated
> violation of probation, the trial court deferred sentencing until the
> resolution of the new offenses.  The prosecutor offered the same fifteen
> (15) year global plea.  Counsel advised Petitioner that forty-seven (47)
> months would be the maximum sentence Petitioner could receive in
> violation case and that any offer exceeding forty-seven (47) months on
> the new offenses was unacceptable because Petitioner would be
> acquitted.  Based on counsel's advice Petitioner again rejected the plea.
> Once again on the morning of trial, the prosecutor made the same plea
> offer.  At this point the prosecutor advised that the trial judge had been

made aware of the States offer and was willing to accept its terms. Trial counsel again advised Petitioner: "Don't worry. I can beat this." Counsel went on to state that the Prosecutor could not legally meet its burden of proof and that, the Petitioner would be acquitted. Petitioner declined the offer based on Counsel's advice, believing that the Prosecutor could not legally obtain a conviction. A jury trial ensued and the Petitioner was convicted of three of the four offenses. At sentencing, the trial court sentenced the Petitioner to forty-seven (47) months State Prison on the violation of probation case and a total of thirty-six (36) years State Prison for the new offenses, to run consecutive to the violation of probation case. The Petitioner's overall sentence exceeds forty (40) years State Prison. The Petitioner in this case relied completely on trial counsel's advice that he would win an acquittal at trial on the new offenses, that the Prosecutors evidence was legally insufficient to obtain a conviction. Because of counsel's statements Petitioner rejected the plea offer and proceeded to trial. Petitioner was convicted and sentenced to a forty (40) year prison term, twenty-five (25) more years that he would have received had he accepted the Prosecutors offer. In the case at bar the prosecutor repeatedly made this offer. The prosecutor went so far as to offer the deal AFTER the close of his case-in-chief. The trial judge had already approved the offer. Had the Petitioner been properly advised that the jury could convict him finding him guilty beyond a reasonable doubt, the Petitioner would have accepted the approved offer of fifteen (15) years resulting in a much smaller sentence of incarceration.

(Doc. 1, pp. 4-6).

Respondent concedes that this claim is largely taken verbatim from Claim One of petitioner's Rule 3.850 motion; that the state court denied relief on the merits after an evidentiary hearing; that petitioner appealed the ruling; and that it appears petitioner satisfied the exhaustion requirement. (Doc. 17, pp. 17-19 and n.4). Respondent asserts that petitioner is not entitled to relief, because he cannot establish

that the state courts' rejection of his claim was contrary to or an unreasonable application of *Strickland*, or that it was based on an unreasonable determination of the facts in light of the evidence presented to the state court.  (*Id*., pp. 19-23).

A.    Clearly Established Federal Law

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."  *Lafler v. Cooper*, — U.S. —, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012) (*citing Missouri v. Frye*, — U.S. —, 132 S. Ct. 1399, 1404, — L. Ed. 2d — (2012), *and McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).  "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 132 S. Ct. at 1387.  The two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies to claims that counsel was ineffective during plea negotiations.  *Lafler*, 132 S. Ct. at 1384 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject plea offer); *Frye*, 132 S. Ct. at 1404, 1409-10 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate prosecution plea offer before it lapsed); *Hill v. Lockhart*, 474 U.S. 52, 48, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying *Strickland*'s two-part test to defendant's challenge to guilty plea based on ineffective

assistance of counsel).  *Strickland*'s first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'"  *Hill*, 474 U.S., at 57 (*quoting Strickland*, 466 U.S. at 688).  *Strickland*'s second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Hill*, 474 U.S. at 59.

"Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Richter*, 131 S. Ct. at 788.  As the *Richter* Court explained:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Id*. (citations omitted).

B.    Section 2254 Review of State Courts' Decision

This claim was addressed at the state postconviction evidentiary hearing held October 23, 2013, at which petitioner, his former trial counsel (David Dunkerley) and others testified. (Ex. V). The state courts denied petitioner's claim on the merits. The state circuit court's written order, which is the last reasoned decision rejecting petitioner's claim, began by correctly identifying and explaining the *Strickland* standard as the relevant legal standard. (Ex. W, pp. 138-39). The state circuit court denied relief as follows:

### *Ground one: Misadvice*

Defendant avers that his counsel advised him not to accept a plea offer from the State of 15 years state prison. Counsel indicated that the State could not legally procure a verdict of guilty against Defendant, and that Defendant would "beat" the charges. As such, counsel advised that accepting a plea offer of more than 47 months in prison would be a mistake.

At the evidentiary hearing convened in this cause, the Court heard testimony regarding this issue. Defendant and two defense witnesses testified that counsel had been "comfortable" with taking the case to trial and felt he could win the trial.

Defendant further testified that he had been friends and business acquaintances with trial counsel for years and trusted him greatly. Trial counsel had told him that the State's plea offer of 15 years state prison was not a good offer. He took trial counsel's statements about the case to be a guarantee of victory at trial and rejected the plea agreement. Defendant conceded, however, that he feared being committed again under the Jimmy Ryce Act, and admitted that the decision to take the plea or go to trial had been his, not his counsel's.

Trial counsel testified that Defendant and the two defense witnesses were essentially correct in their recollections that he had felt comfortable in taking the new case to trial.  He explained that he had two witnesses, besides Defendant himself, who had been eyewitnesses to the event and would testify on defendant's behalf.

Trial counsel testified that the "elephant in the room" had been Defendant's probable commitment under the Jimmy Ryce Act after he had completed his prison sentence.  Defendant had previously gone through the treatment provided to offenders under the Act and had done well enough to have been released.  He did not know how Defendant would have been able to convince the same doctors that the treatment had actually worked the second time around.  Trial counsel feared that if Defendant were to go to prison on these charges, he would be committed under the Act and spend "decades" or perhaps the remainder of his life in the treatment facility.  Trial counsel had advised Defendant to go to trial due to this concern.  He was emphatic, however, that he had never guaranteed a favorable outcome and had made sure defendant knew that the choice regarding whether to proceed to trial was his, not his counsel's.

The Court finds trial counsel's testimony to be credible.  The Court also finds incredible Defendant's testimony that he would have accepted a plea were it not for counsel's misadvice.

Defendant knew the choice as to whether to go to trial belonged to him alone.  The Court finds that Defendant did not want to take a plea for fear of being committed for a lengthy period of time after his incarceration under the Jimmy Ryce Act, making his decision an "all or nothing" proposition.  He would either go free or spend very likely the remainder of his life in custody.  The Court finds that counsel did not misadvise Defendant and that he made an informed and voluntary choice to go to trial.

(Ex. W, pp. 139-141) (footnote omitted).  The First DCA summarily affirmed.  (Ex.

BB).

The "contrary to" prong of the AEDPA standard is not implicated here, because the state court utilized the *Strickland* standard.  Section 2254(d)(2) likewise provides no basis for relief, because petitioner has not shown that "no 'fairminded jurist' could agree" with the state court's factual determinations, including its credibility determinations.  *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012); *Landers v. Warden, Attorney Gen. of Ala.*, 776 F.3d 1288, 1294 (11th Cir. 2015) (reiterating that standard as the test for evaluating the reasonableness of a state court's decision under § 2254(d)(2)).  Petitioner likewise has not shown, by clear and convincing evidence, that any factual finding or credibility determination is incorrect.  As the Eleventh Circuit has emphasized:

> Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review.  Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  *Marshall v. Lonberger*, 459 U.S. 422, 103 S. Ct. 843, 851, 74 L. Ed. 2d 646 (1983).  We consider questions about the credibility and demeanor of a witness to be questions of fact.  *See Freund v. Butterworth*, 165 F.3d 839, 862 (11th Cir. 1999) (en banc).  And the AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).

*Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011*); see also Gore v. Sec'y for Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that while a reviewing court also gives a certain amount of deference to credibility

determinations, that deference is heightened on habeas review) (*citing Rice v. Collins*, 546 U.S. 333, 341-42, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination"))).

The remaining question is whether petitioner has satisfied AEDPA's "unreasonable application" standard, giving deference to the state court's findings of fact, including its credibility determinations.  28 U.S.C. § 2254(e).  The state court found Attorney Dunkerley's evidentiary hearing testimony credible.   Attorney Dunkerley testified that he had been an attorney since 1994; that he had worked in the Office of the Public Defender since 1999 (over a decade at the time of petitioner's trial); that for ten years he was responsible for defending all of the child sexual abuse cases in Florida's First Judicial Circuit; that of any attorney in the Circuit (public defender or private), he had the most experience in child sexual abuse cases; that he represented at least 50 child sexual abuse defendants at trial; and that he had handled all of the Jimmy Ryce Act commitment proceedings for the Public Defender's Office in the First Judicial Circuit.  (Ex. V, pp. 122-123).  Attorney Dunkerley summarized why he recommended to petitioner that he not take the plea offer:

> [W]hen this first broke, I talked to Steve [petitioner] pretty quickly and
> found out about what was going on.  The thing – the elephant in the

room in our conversation was Jimmy Ryce. I mean, I'd represented him before on that. He ultimately committed himself, and he had spent several years in treatment down there, progressed far enough, did well enough in treatment that he persuaded the doctors that he was safe to be released, and he got out. . . .

These charges were disturbingly similar to what he had before as far as the age and gender of the alleged victim in this case. So the concern is if he gets convicted, the chance of him going back to the Jimmy Ryce Center in my opinion are quite high. I mean, I'm not a doctor, but I cross-examine these doctors a lot. I go to dinner with these doctors. I know what they think and how they look at this stuff, and I would be absolutely floored if at the end of his prison sentence he was not reviewed for Jimmy Ryce and also recommended for commitment. The problem he's going to have when he goes back to that program is that he's going to be getting a similar treatment to what he's already received, and I think he'll progress through the treatment fine. But when he gets to the end of it, how does he convince these same doctors that this time it stuck, this time it took?

. . . .

We discussed that. And we were very concerned that if he got convicted . . . he would go down back to the Jimmy Ryce Center and he could be there – it's an indefinite commitment. He could be down there for decades if not the rest of his life. We viewed this. We used the term that this was an all or nothing. We had to win it or this could be the rest of his life.

(Ex. V, pp. 116-117). Attorney Dunkerley further testified that he did not promise

or guarantee a win at trial. (Ex. V, pp. 124, 125, 126 ("I never made anyone any

guarantees.")). Dunkerley merely advised petitioner why he was comfortable taking

the case to trial. (*Id*., p. 125 ("We had two witnesses on our side that were at the

same location, time when these occurrences supposedly happened. Looking at it

likely, I mean the State had the alleged victim and one witness that was there, we had three.  It seems a very winnable trial.  That doesn't mean I guaranteed we won.")).  It was petitioner who made the decision to go to trial.  (*Id*., p. 124).

After careful review of the state circuit court's findings and the state court record, this court cannot say that the state courts' rejection of petitioner's claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. 103.  The presumption that Attorney Dunkerley's conduct was reasonable is even stronger than in the usual case because of his extensive experience.  *See Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000) ("When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger.").  The state court was not unreasonable in concluding that Attorney Dunkerley's performance during plea negotiations was not constitutionally deficient.

The state courts' decision was not contrary to *Strickland*, did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two           "Trial counsel was ineffective for allowing the prosecutor to argue three separate incidents of lewd molestation where only one count was charged in violation of petitioner's constitutional rights."  (Doc. 1, p. 6).

This claim involves Count 2 of the information, which charged lewd or lascivious molestation.  Petitioner claims trial counsel was deficient for failing to object when the prosecutor argued during closing that there were three incidents of lewd or lascivious molestation, because the State charged only one count.  Petitioner argues that the error made it impossible to determine which incident led to his conviction on Count 2, and whether the jury's verdict was unanimous.  (Doc. 1, pp. 6-7).  Petitioner identifies this as the prosecutor's argument warranting objection:

> Count 2 is the charge of lewd or lascivious molestation[.] . . .
>
> Stephen Furney -- Element number two is that Stephen Furney intentionally touched in a lewd or a lascivious manner the genitals or the clothing covering the genitals of [H. H.].
>
> . . . .
>
> Now Stephen Furney did touch [H.]'s genitalia on at least three occasions.  He had physical contact with [H.]'s genitalia on that same night in his bedroom when he held him on top of himself.  But then he also had more direct contact when he physically touched [H.] on his private parts on that boat during that boating ride in the cabin.
>
> [H.] told you how Mr. Furney asked him to pull down his underwear – pull down his bathing suit and touched him, began to masturbate him, and then asked him to finish himself and watched him masturbate.  So he touched him physically on his genitalia at that time.

> And then again later that night, in the truck, he, again, touched him before and after touching him with his mouth.  So we have those three different occasions where the elements of guilty on Count 2 are satisfied.

(Ex. C, pp. 302-303).

Respondent concedes that this claim is largely taken verbatim from Claim Two of petitioner's Rule 3.850 motion; that the state court denied relief on the merits after an evidentiary hearing; that petitioner appealed the ruling; and that it appears petitioner satisfied the exhaustion requirement.   (Doc. 17, pp. 23-25 and n.5).  Respondent asserts that petitioner is not entitled to habeas relief, because he cannot satisfy the § 2254(d) standard.  (*Id*., pp. 25-30).

A.      Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard, set forth above.

B.      Section 2254 Review of State Courts' Decision

This claim was addressed at the state postconviction evidentiary hearing held October 23, 2013.  (Ex. V).  The state courts denied petitioner's claim on the merits. The state circuit court's written order, which is the last reasoned decision rejecting petitioner's claim, began by correctly identifying and explaining the *Strickland* standard as the relevant legal standard.  (Ex. W, pp. 138-139).  The state circuit court denied relief as follows:

### Ground two: Improper Argument

Defendant alleges that counsel was ineffective for failing to object to the fact that multiple acts were charged within one count of lewd and lascivious molestation.  Defendant argues that allowing the jury to deliberate with regard to three separate acts on one charge created the possibility of a non-unanimous verdict.

"Where a single count embraces two or more separate offenses, albeit in violation of the same statute, the jury cannot convict unless its verdict is unanimous as to at least one specific act." *Robinson v. State*, 881 So. 2d 29 (Fla. 1st DCA 2004).  "Reasonable strategic decisions of trial counsel should not be second-guessed by a reviewing court." *Jones v. state*, 845 so. 2d 55, 65 (Fla. 2003).  Furthermore, "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000).

At the evidentiary hearing, trial counsel testified that he had taken notice of the multiple acts indicated but had decided not to object to the issue.  He was aware that had he objected, the State could have chosen to bring the allegations in three different counts, thereby greatly increasing Defendant's sentencing exposure and risk of conviction.  He believed that having the three incidents bundled into one count was actually favorable to the defense.  As noted above, the Court finds trial counsel's testimony to be credible.

Trial counsel's decision, therefore, was a reasonable, strategic decision designed to shield Defendant from the possibility of more egregious sanctions.

(Ex. W, pp. 141-142).  The First DCA summarily affirmed.  (Ex. BB).

Again, the "contrary to" prong of the AEDPA standard is not implicated here, because the state court utilized the *Strickland* standard.  Petitioner has not rebutted

the state court's factual findings with clear and convincing evidence to the contrary; nor has he shown that any factual determination is objectively unreasonable.  The state court found Attorney Dunkerley's testimony credible, a determination to which this court defers.  Attorney Dunkerley testified that he was fully aware that the prosecutor was wrapping three incidents into one count of lewd or lascivious molestation, and that he purposely declined to object to (and, in fact, affirmatively relied on) the State's including three incidents of molestation under one charge as a matter of strategy to limit petitioner's sentencing exposure.  Because fairminded jurists can concur in the state courts' determination that counsel's strategic decision was reasonable, petitioner is not entitled to federal habeas relief.  *See, e.g., Sirias v. Sec'y, Dep't of Corr.*, No. 2:14-cv-23-FtM-29CM, 2015 WL 5440336, at *22 (M.D. Fla. Sept. 15, 2015) ("Given that it was not improper for the state to charge Petitioner with one count of lewd and lascivious molestation based upon his multiple actions over one night, and given the possibility of multiple charges had counsel objected to the single charge, defense counsel's performance was not deficient for failing to object to the information.).

Petitioner argues that the state courts' decision was unreasonable, because although Dunkerley's fear of detrimental amendment of the charges provided a reasonable basis not to object prior to trial or during the presentation of evidence, it

did <u>not</u> provide a reasonable basis for failing to object during closing argument, because closing argument came <u>after</u> the time when the State could have amended the information.  (Doc. 20, pp. 2-4).  Petitioner's argument fails to account for Florida law prohibiting that strategy through principles of abandonment, waiver, acquiescence, and/or estoppel.

By intentionally waiting until after the close of evidence to raise an issue that was known to the defense prior to trial, during opening statements, and during the evidentiary portion of the trial, the defense waived any right to challenge the State's bundling of three separate incidents of molestation into one charge.  *See Perley v. State*, 947 So. 2d 672, 674 (Fla. 4th DCA 2007) ("So-called technical deficiencies in a charging instrument are waived if the defendant does not raise them before the state rests its case." (*quoting Castillo v. State*, 929 So. 2d 1180, 1181 (Fla. 4th DCA 2006))).  Florida's rules of criminal procedure "serve to discourage defendants from waiting until after a trial is over (or after the close of the evidence) before contesting deficiencies in a charging document which could have easily been corrected if they had been raised before trial."  *Duarte v. State*, 59 So. 3d 313 (Fla. 3d DCA 2011) (*discussing* Fla. R. Crim. P. 3.190(c) and 3.140(o), *and citing DuBoise v. State*, 520 So. 2d 260, 264 (Fla. 1988)); *see also Ray v. State*, 403 So. 2d 956, 960 (Fla. 1981) ("An accused, as is required of the state, must comply with established rules of

procedure designed to assure both fairness and reliability in the ascertainment of

guilt and innocence.  The failure to object is a strong indication that, at the time and

under the circumstances, the defendant did not regard the alleged fundamental error

as harmful or prejudicial.").  As explained further by the Florida Fourth District

Court of Appeal:

> Child sexual abuse cases pose unique problems for prosecution, as our supreme court has recognized.  *See Dell'Orfano v. State*, 616 So. 2d 33, 35 (Fla. 1993).  Because the state may charge a defendant in child sexual abuse cases in a manner not permitted in other types of criminal cases, expanding time periods for the commission of offenses and grouping types of offenses together, we hold that it is not fundamental error to submit such a charge to the jury.   A defendant must object at trial to submission to the jury of an aggravated charge to preserve the objection.  Otherwise, the prosecution may assume that by failing to challenge the charging pattern, the defendant has acquiesced in the state's determination to charge all of the same type of acts within a single count.  Indeed, by doing so the prosecution actually lessens the potential penalty to the defendant.  Where each charge is discrete and charged as such, the defendant is subject to substantially greater penalties and potential consecutive sentencing on each charge.

*Whittingham v. State*, 974 So. 2d 616, 618-619 (Fla. 4th DCA 2008).

The state courts' conclusion that counsel did not perform deficiently was not

contrary to, and did not involve an unreasonable application of, the *Strickland*

standard.  Nor was the decision based on an unreasonable determination of the facts.

Petitioner is not entitled to federal habeas relief on Ground Two.

Ground Three          "Trial court erred in admitting hearsay evidence alternatively trial counsel was ineffective for failing to move in limine and properly object to the admittance of the hearsay evidence in violation o[f] the petitioner's constitutional rights."  (Doc. 1, p. 8).

Petitioner's final claim presents two sub-claims, both arising from the admission of evidence concerning a handwritten, unsigned note the victim's stepfather found next to his vehicle.  The note itself was admitted into evidence, as was the testimony of the stepfather concerning his discovery of the note and its contents.  (Ex. C, pp. 52-54 (prosecutor's discussion of note in opening statements and defense counsel's objection); pp. 76-80 (stepfather's testimony concerning the note and defense counsel's objections); pp. 89-90 (admission of note into evidence and defense counsel's objection); *see also* Ex. D (note itself)).  The note states:  "that guy Steve the grown man <u>was</u> sexually assaulting [H.].  <u>AND</u> they ran into a guy she cheated on him with".  (Ex. D).

Sub-Claim One:  Trial Court Error

In his first sub-claim, petitioner claims the trial court erred in allowing the note and its contents to be presented to the jury because, in overruling defense counsel's objections on hearsay grounds, "the note was in fact hearsay."  (Doc. 1, pp. 8-9).  Petitioner goes on to argue:

> It was accusatory in nature and specifically accused Petitioner of the very crime he was charged with without the benefit of confronting its

author.  Additionally the note suggested the presence of other witnesses that were aware of Petitioner's guilt.  Petitioners inability to cross examine the author of the note violated his constitutional right to confront any adverse witnesses against him.  The trial court by a allowing the note to be read to the jury and admitted into evidence to show a sequence of events notwithstanding any hearsay exception still violated Petitioner's Federal Constitutional rights.  The sequence of events could have been explained differently.  The State Court's failure to grant relief on this claim violates Petitioner's constitutional rights and is contrary to or an unreasonable application of clearly established Supreme Court 1 law.

(Doc. 1, p. 9) (typographical errors in original).

Respondent asserts a procedural default defense, arguing that although petitioner challenged the trial court's evidentiary rulings concerning the note in his *pro se* initial brief on direct appeal, he raised the claim as a purely state law issue and not one of federal constitutional dimension, *i.e.*, that admission of the note also violated his Sixth Amendment right of confrontation under the United States Constitution.  (Doc. 17, pp. 31-37).  In his reply, petitioner concedes his procedural default, but argues that appellate counsel's ineffectiveness on direct appeal qualifies as "cause", under *Martinez v. Ryan*, to excuse the default.  (Doc. 20, p. 6 (*citing Martinez v. Ryan*, — U.S. —, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012))).

Petitioner's reliance on *Martinez* is misplaced.  In *Martinez*, the Supreme Court established an equitable rule whereby a federal habeas petitioner may establish cause, in narrow circumstances, to excuse the procedural default of a substantial

<u>ineffective assistance of trial counsel claim asserted in a first initial-review collateral</u>

<u>proceeding</u>.  *Id*., 132 S. Ct. 1309.  The procedural default at issue here involves a

claim of trial court error asserted in a direct appeal.

Notwithstanding the inapplicability of *Martinez*, claims of ineffective

assistance of appellate counsel <u>can</u> establish cause for a procedural default.

Petitioner raised a claim of ineffective assistance of appellate counsel in his state

habeas petition, claiming that appellate counsel was ineffective "for failing to raise

reversible trial court error where the trial court allowed the prosecutor, over defense

objection to admit into evidence out-of-court accusatory statements made in an

anonymous note."  (Ex. P, pp. 3-8).  Petitioner argued appellate counsel erred by

concluding, in his *Anders* brief, that he was unable to argue in good faith that the

trial court erred in admitting evidence about the note, because, in fact, appellate

counsel had several valid state-law arguments:  (1) the evidence was inadmissible

hearsay; (2) even if not hearsay, it was inadmissible under state decisional law

because the purpose for which it was offered was not a relevant, material issue in the

case; (3) it was unduly prejudicial; and (4) the trial court's ruling ran afoul of several

state appellate court decisions.  (Ex. P (*citing King v. State*, 684 So. 2d 1388 (Fla.

1st DCA 1999); *Daniels v. State*, 606 So. 2d 482 (Fla. 5th DCA 1992); *Wise v. State*,

546 So. 2d 1068 (Fla. 2d DCA 1989); *Wilding v. State*, 674 So. 2d 114 (Fla. 1996))).

Petitioner did not fault appellate counsel for failing to raise a federal constitutional challenge under the Sixth Amendment's Confrontation Clause – the claim he now seeks to raise on federal habeas.  *See McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (holding that to satisfy the exhaustion requirement, a petitioner must have presented the instance of ineffective assistance that he asserts in his federal petition "such that a reasonable reader would understand [the] claim's particular legal basis and specific factual foundation" ) (internal quotation marks omitted).

"The comity and federalism principles underlying the doctrine of exhaustion of state remedies require an ineffective-assistance claim to be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Edwards v. Carpenter*, 529 U.S. 446, 447, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000); *Henderson v. Campbell*, 353 F.3d 880, 896 (11th Cir. 2003) ("[T]he Supreme Court fairly recently made clear that an ineffective assistance of counsel claim being used for cause to excuse a procedural default of another claim is not itself excepted from the doctrine of procedural default." (*citing Edwards v. Carpenter, supra*)); *see also, e.g., Dowling v. Sec' for Dep't of Corr.*, 275 F. App'x 846, 847-878 (11th Cir. 2008) ("Because Dowling did not raise his ineffective assistance of appellate counsel claim in state court and is precluded from seeking additional review of that claim in state court, Dowling's ineffective assistance of

appellate counsel claim is procedurally defaulted and cannot be considered as cause for the default of his trial court error claim."). Because petitioner procedurally defaulted the ineffective assistance of appellate counsel claim he now asserts as cause for his procedural default of his federal constitutional challenge to the evidentiary ruling, he cannot overcome his procedural default. Petitioner's Sub-Claim One provides no basis for federal habeas relief.

Sub-Claim Two:   Ineffective Assistance of Trial Counsel

In his second sub-claim, petitioner claims defense counsel was ineffective for "fail[ing] to move in limine prior to trial or research and prepare for his objection" to the note and the stepfather's testimony about it. (Doc. 1, p. 9). Petitioner asserts defense counsel should have objected on these bases: (1) the note "was prejudicial because it implied that a mystery witness existed that was aware that the Petitioner was sexually assaulting the victim"; (2) the defense was unable to cross-examine the author of the note; (3) the note was inadmissible to show a sequence of events leading to the discovery of the allegations against petitioner because the prejudicial effect of the note outweighed its probative value; and (4) "despite any exception to the hearsay rule, the note still violated Petitioner's' constitutional rights." (*Id.*). Petitioner also asserts counsel "should have suggested an alternative means to establish the sequence of events". (*Id.*). Petitioner argues he was prejudiced by

counsel's performance, because had counsel "prepared and investigated the admissibility of the note and proffered a correct argument to the court the note nor its contents would have been admitted, resulting in an acquittal. Alternatively the admissibility of the note would have been properly preserved for appellant review where the Petitioner would have eventually been granted relief." (*Id*., p. 10).

Respondent asserts that except for petitioner's assertion that he "was unable to cross-examine its author", petitioner's ineffective assistance claim is largely taken verbatim from Claim Four of his Rule 3.850 motion; that the state court denied relief on the merits after an evidentiary hearing; that petitioner appealed the ruling; and that it appears petitioner satisfied the exhaustion requirement (with the exception noted above). (Doc. 17, pp. 38-41 and n.7). Respondent asserts that petitioner is not entitled to habeas relief, because he cannot establish that the state courts' rejection of his claim was contrary to, or an unreasonable application of *Strickland*, or that it was based on an unreasonable determination of the facts in light of the record before the state court. (*Id*., pp. 25-30).

A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard, set forth above.

B.     Section 2254 Review of State Courts' Decision

This claim was addressed at the state postconviction evidentiary hearing held October 23, 2013.  (Ex. V).  The state courts denied petitioner's claim on the merits. The state circuit court's written order, which is the last reasoned decision rejecting petitioner's claim, began by correctly identifying and explaining the *Strickland* standard as the relevant legal standard.  (Ex. W, pp. 138-139).  The state circuit court denied relief as follows:

### Ground four:  Insufficient Objection

Defendant alleges that his trial counsel was ineffective with regard to his handling of an anonymous note used as evidence by the State.  At trial, the State sought to admit into evidence a note that had been left anonymously for the victim's stepfather.  It read, "That guy, Steve, the grown man was sexually assaulting [the victim]."  Trial counsel objected to the admission of the contents of the note, arguing that it was unreliable hearsay and that revealing the contents of the note was unnecessary to show the logical sequence of events.  Trial counsel argued, "There's a lot of ways they can get around this note. . . . They can also talk about they found a note and that note triggered them to go and look and talk to [the victim] without going into the content of the note."  The Court accepted the State's argument that the contents of the note were not hearsay because they were not being offered to prove the truth of the matter asserted.  The Court then ruled that the contents of the note were not more prejudicial than probative.  The Court overruled the objection and allowed the contents of the note to be made known to the jury.

Defendant argues that trial counsel should have moved *in limine* to bar the note from evidence or should have lodged a more specific objection at trial.  Defendant asserts that, had counsel taken these

actions, the outcome of the trial would have been different, or, in the alternative, the issue would have been preserved for appellate review.

### *In Limine*

Even if trial counsel had been ineffective for failing to file a motion *in limine*, Defendant has failed to show that he was prejudiced thereby.  "[I]n order to establish prejudice to support  his request for postconviction relief, [the defendant] had to show that if counsel had taken the proposed action there is a reasonable probability that the outcome of the trial would have been different."  *State v. Richardson*, 963 So. 2d 267, 271 (Fla. 2d DCA 2007) *citing Strickland, supra*. Defendant has not shown that the Court would have ruled differently had trial counsel made his argument pre-trial rather than at sidebar at trial.

### Specificity

Defendant alleges that rather than making a non-specific hearsay objection, "counsel should have objected, arguing that the note was prejudicial because it implied that a mystery witness existed that was aware that the Defendant was sexually assaulting the victim." Defendant urges that trial counsel should further have insisted that the contents of the note were not admissible to show a logical sequence of events, as the prosecutor argued.  Finally, Defendant argues that trial counsel should have insisted that the contents of the note were more prejudicial than probative.

*Daniels v. State*, 606 So. 2d 482, 484 (Fla. 5th DCA 1992), provides "If it is important to establish a logical sequence of events, the detailed out-of-court accusatory remarks should be avoided and summary explanations should be substituted."  Although trial counsel did not cite the *Daniels* case in his argument, he made the argument set forth in *Daniels*, without success.

### Preservation

Further, Defendant has failed to show that the issue was not preserved for appeal. "In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved." *Aills v. Boemi*, 29 So. 3d 1105, 1109 (Fla. 2010) (internal citation omitted).

Trial Counsel made a specific objection regarding the admissibility of the note, and the Court overruled the objection. Thus, trial counsel preserved the issue for appeal.

Defendant believed that the issue had been preserved for appeal because he raised the issue of the admissibility of the note in a *pro se* initial brief he filed after appellate counsel had filed an *Anders* brief. The note issue was the only issue raised on appeal, and the appellate court *per curiam* affirmed this Court's judgment and sentence.

(Ex. W, pp. 144-146) (alterations in original) (footnotes omitted). The First DCA summarily affirmed. (Ex. BB).

The "contrary to" prong of the AEDPA standard is not implicated, because the state court utilized the *Strickland* standard. Section 2254(d)(2) likewise provides no basis for relief, because petitioner has not shown that "no 'fairminded jurist' could agree" with the state court's factual determinations. *Holsey, supra*; *Landers, supra*. The remaining question is whether petitioner has satisfied AEDPA's "unreasonable application" standard, giving deference to the state court's findings of fact.

The court has carefully reviewed the relevant portions of the trial transcript. The record establishes, and petitioner conceded in his state habeas petition, that defense counsel made repeated specific, contemporaneous objections on grounds of hearsay, unreliability, undue prejudice, and the availability of alternative means to achieve the State's purpose (relating how the allegations came to light). (Ex. C, pp. 52-53, 76-78, 79-81, 89-90 (trial transcript); Ex. P, pp. 4-7 (state habeas petition)). When counsel's objections were overruled, defense counsel adeptly took the opportunity to draw the jury's attention to the other portion of the note (that portion suggesting the victim's mother was having an affair) to attack the credibility of the stepfather's testimony and to argue to the jury that the stepfather had planted the note out of jealousy that his wife (the victim's mother) was spending a lot of time with petitioner. (Ex. C, pp. 84-89, 318). The record also establishes, as petitioner conceded in his state habeas petition, that defense counsel requested that the prosecutor explain the sequence of events in an alternative way, and even proposed an alternative. (Ex. C, pp. 77-78; Ex. P, pp. 4-7).

In light of the state court's findings and the record before that court, it was reasonable to conclude that petitioner failed to establish deficient performance and prejudice arising from trial counsel's handling of, and attempts to exclude, the anonymous handwritten note. The state courts' rejection of petitioner's ineffective

assistance claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard.   Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Sub-Claim Two.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).   Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should

issue." Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Stephen Lewis Furney a/k/a/ Stephen Lewis Furney, II*, Escambia County Circuit Court Case No. 10-CF-002015, be DENIED, and the clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 3rd day of May, 2016.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.   A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.